[Civ. No. 3193.    Third Appellate District.—February 24, 1927.]

JULIA B. LINSER, as Administratrix, etc., Appellant, v. MARTIN P. LAUFFER, Respondent.

[1] DEEDS — ACTION TO SET ASIDE — RECONVEYANCE TO GRANTOR—UNDERSTANDING OF PARTIES — FINDING—EVIDENCE.—In this action to set aside two deeds made by a mother to her son and his wife, the evidence was sufficient to support the finding that there was no promise or understanding to the effect that the property was to be reconveyed to the mother.

[2] ID.—UNDUE INFLUENCE—FINDING—EVIDENCE.—In such action, the evidence was sufficient to support the finding that the execution of the deeds in question was not the result of undue influence.

---

(1) 18 **C. J.,** p. 450, n. 67.    (2) 18 **C. J.,** p. 445, n. 34.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

Puter & Quinn and J. F. Coonan for Appellant.

W. F. Clyborne and Delos A. Mace for Respondent.

FINCH, P. J.—This action was brought to set aside two deeds executed by Phillipina Schroeder conveying certain lands to defendant Martin P. Lauffer and Emma Lauffer, his wife. Judgment was entered in favor of defendant and the plaintiff has appealed.

In the year 1880 Frederick Schroeder, a widower, owned and, with his daughter Emma, resided upon a mountain ranch, consisting of the land, or the greater part thereof, here in controversy. At that time Phillipina Lauffer was a widow, residing with whom were her two children, Julia B. Lauffer and Martin P. Lauffer, defendant, of the respective ages of fifteen and nine years. During that year Schroeder and Mrs. Lauffer married and thereafter lived together on the Schroeder ranch as husband and wife, their said children living with them, except as hereinafter stated, and performing services suitable to their ages and capacities. Julia married Charles Linser about three years later and she and her husband lived on the ranch for about a year and thereafter they resided elsewhere. At a subsequent time Martin and Emma married and thereafter lived together on the ranch as husband and wife and there were there born to them two children. Schroeder died December 20, 1899. In the final settlement of his estate, in accordance with the terms of his last will, an undivided half interest in the lands in controversy was distributed to Phillipina Schroeder, and Martin P. and Emma Lauffer were given a life estate in the other half, the remainder being distributed to their minor children. In June, 1901, Mrs. Schroeder purchased for $2,000 and gave Julia a home, consisting of 220 acres of land, with a house and other improvements thereon. In October, 1901, Mrs. Schroeder signed and acknowledged a deed conveying her half interest in the mountain ranch to Martin P. and Emma Lauffer, but she did not deliver the deed until April, 1905. In March, 1910, she executed a second deed of the same property to the same parties for the purpose of correcting a part of the description in the deed of October, 1901. These are the two deeds which plaintiff seeks to have set aside. April 17, 1905, Mrs. Schroeder made a homestead entry for 160 acres of government land adjoining the lands in controversy and for a considerable time thereafter she resided on the homestead. In May, 1910, she gave notice of intention to make final proof, but

her application therefor was "canceled for failure to appear and make proof." She then abandoned the homestead and the defendant removed the improvements therefrom. Emma Lauffer died prior to the the commencement of this action and the defendant succeeded to her interest in the Schroeder ranch. Mrs. Schroeder died July 24, 1921, being then of the age of eighty-eight years, "lacking two days." The plaintiff is the duly appointed administrator of her estate.

[1] Appellant contends that the deeds in question were executed for the purpose of qualifying Mrs. Schroeder to make the homestead entry and "at the request and by the advice of the said defendant, and upon the promise of the said defendant and the said Emma Lauffer to reconvey the same upon demand." In support of this contention appellant calls attention to the defendant's testimony relative to a payment of $300 to his mother September 4, 1907. He was asked "whether that was the rent or what," to which he replied, "Well, I think it is, as near as I can remember." The evidence does not show whether the rent referred to was that of the then current year or of some previous year. The defendant testified that he held the land under lease until some time in the year 1905. Plaintiff also produced assessment lists for the years 1906, 1907, and 1908, signed by the defendant, in which the property was listed as belonging to the estate of Frederick Schroeder. The evidence shows that the decree of distribution in that estate was not recorded in the office of the county recorder until the year 1908 and that it was the practice of the county assessor to assess all real estate to the record owners thereof as shown by the records of the county recorder. The assessment lists signed by the defendant, therefore, were of little value as evidence. Had the defendant listed the property as belonging to Mrs. Schroeder, that circumstance would have been entitled to greater weight. The defendant testified that there was no promise or understanding to the effect that the property was to be reconveyed to Mrs. Schroeder. The evidence is amply sufficient to sustain the finding that there was no such promise or understanding.

[2] Appellant's main contention is that the evidence conclusively shows that Mrs. Schroeder executed the deeds as a result of undue influence exercised over her by the defendant. There undoubtedly existed a confidential rela-

tion between the defendant and his mother and, in addition to such relation as a proposition of law, she had great confidence in her son. Except for the presumptions arising from such relation, however, the evidence tending to show undue influence is very slight, and there is an entire lack of direct evidence that Mrs. Schroeder was in any manner influenced by any person to execute the deeds. She spoke English brokenly, but could make herself understood in that language. She could read and write German and signed her name in German characters. She was a strong woman, energetic and intelligent. The family physician testified: "I knew her twenty-eight or twenty-nine years. . . . She was able to go about very well until the last few years. . . . I considered she was a very bright woman, a very capable woman. . . . I always considered her a very bright woman, perfectly able to attend to her own business. . . . I never saw her but what I thought she was all right. . . . She was a hard worker; she always worked around the garden, and most of the time did a good deal of it; . . . visited the neighbors, riding horseback all over the country. . . . About the time that she bought the property there, the Williams property, she told me that she gave Mrs. Linser $2,000, I believe, something like that, and that was her share of the property. . . . She and I were quite intimate friends and she spoke to me about it in a confidential manner. . . . I stopped there sometimes two or three days or three or four days" at a time. A banker who was acquainted with Mrs. Schroeder for many years testified: "I was as well acquainted with her as anybody. . . . She was sound mentally and physically as well. . . . I never saw anything the matter with her in the world. Of course, she could not speak very good English, and she was sometimes difficult to understand what she was saying, but a person acquainted with her could understand her particularly. She was a bright woman. . . . Perfectly capable. . . . The first time I saw her she was horseback. She was the pioneer woman to ride astraddle that I ever saw in California up to that time. . . . That was when she married Fred Schroeder. She rode from Harris to Blocksburg to get married, and I have known her ever since. . . . (From 1900 to 1910) she was just as sound mentally as I am. . . . I never saw any difference. . . . The time I last saw her she was all right. . . . That might

have been a year or so before she died. . . . She was in
my office here and called on me. . . . I did not see any dif-
ference so far as her mind was concerned; she was getting
older, that is all." A number of other witnesses gave testi-
mony to the same effect as that of the physician and the
banker. Several of them testified that Mrs. Schroeder said
that she had given Mrs. Linser a home and that that was
all she would get, that the mountain ranch was to go to
the defendant and his wife. The evidence shows that Mrs.
Schroeder traveled alone as late as 1917, visiting friends
in Alameda County during that year; that the defendant
frequently furnished her money; that she told some of
her friends that she could get money from him whenever
she wanted it. One of her friends testified: "She told me
that she bought the property for Julia . . . and that
Julia had sold it. When she was telling me about it she
was very sorry and deplored the fact that Julia could not
have kept it, and she said Julia gets nothing more from
me. I have heard her say that a half a dozen times. . . .
She gets nothing more from me, because she considered that
Julia's share. . . . She always expressed the wish that her
property would go to Emma and Martin. She said a good
deal of it came through Emma, her property, and she al-
ways claimed Emma and Martin should have that prop-
erty." A neighbor of Mrs. Schroeder testified: "She told
me that she had bought that property for Julia and Charles
and that was to be her part of her estate. . . . She said she
thought it would make them a good home. It was a nice
place, and that was to be her share of her property. . . .
She said that Emma and Martin, her son, was to get her
share of the place, she had made a gift of that to them,
if they would look after her as long as she lived. . . . She
told me she could get money from her son Martin any time
she wanted it. . . . She told me often that she had a hun-
dred dollar check that Martin had given her. . . . She
seemed to have all she wanted." There is much other tes-
timony of the same character as that quoted. The defendant
testified that he never attempted in any manner to influence
his mother to execute the deeds and that, in addition to the
consideration of love and affection expressed in the deeds,
and as a further consideration therefor, he agreed to sup-
port and maintain his mother as long as she lived, and that

he had faithfully performed the agreement on his part. It is very doubtful whether the evidence, viewed in the light most favorable to the appellant, is sufficient to support a finding that the execution of the deeds in question was the result of undue influence, but it is perfectly clear that the whole evidence is amply sufficient to justify a contrary finding. This is so manifest from the evidence herein set out that citation of authorities is deemed unnecessary.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 25, 1927.